Good morning, everyone. Looks like we need a larger courtroom for today. First matter is Boyd v. Warden of Weymouth. Mr. Dulgence, good morning. You have five uninterrupted minutes. That's hard to imagine, Your Honor. We should do it more often. Good morning, Chief Judge Sirica, members of the Court. My name is Tom Dulgence. I'm from the Philadelphia District Attorney's Office for the Appellants, the Commonwealth of Pennsylvania. I'd like to reserve five minutes for rebuttal, if I may. Christopher Boyd pled guilty in 2001 in state court to the brutal assault of a young man named Raymond Jones with a baseball bat. He entered an open plea, and after a hearing, he was given a sentence of eight to 22 years in prison. He claims that his lawyer did not personally inform him about an earlier plea deal, which would have involved a shorter prison term. The state courts held that his plea was knowing and voluntary. The state courts also held that Boyd had known about his earlier plea offer before he entered his open plea. The magistrate judge, Judge Suderi, who I'm sorry to know passed away a few days ago, and who we'll all miss, the magistrate judge held that while Boyd's lawyer did not tell him personally about the offer, at least not at first, Boyd knew about the earlier offer because his lawyer had told his mother, who in turn told Boyd. That was the plan, and that's what happened. The district court, however, found that that wasn't enough, that because Boyd's lawyer didn't tell him face-to-face and immediately about the offer, that was per se deficient performance, and because he ended up with a longer sentence than the original offer, that was per se prejudice. Now, that's not the law, and that decision was incorrect for a number of reasons, but there are two overarching points I'd like to make at the outset. First, given the credibility findings by the magistrate judge and the factual finding of the state court, and even the testimony, the undisputed testimony at the evidentiary hearing before Magistrate Suderi, to affirm the district court, this court would have to endorse a per se rule that either a lawyer tells his client immediately and face-to-face about a plea offer, or he's ineffective if the ultimate sentence ends up being longer. In other words, this court would have to hold that it doesn't matter what Boyd knew, or specifically that he knew about the earlier offer at the time that he entered his open plea, and it doesn't matter that Boyd's lawyer did eventually tell him face-to-face about the earlier offer, and it doesn't matter that the earlier offer was still available at that time, and it doesn't matter whether Boyd would have rejected the deal even in a face-to-face meeting, and it doesn't matter that the rejected offer was within the guidelines and not obviously a great bargain. The district court held explicitly or implicitly that none of that matters, and the law says otherwise. The second overarching point I'd like to make, the state court held on direct appeal that Boyd's plea was knowing and voluntary. That decision is due deference here under Section 2254D of the habeas statute, which means it must stand unless unreasonable. That conclusion is also well supported by the record, and the court must defer to any subsidiary factual findings. As I understand it, Boyd now says he's not challenging the ultimate plea, and he doesn't contend that it was not knowing and voluntary. He says he's only challenging the plea bargaining process, but there's no such claim as that. Once a defendant pleads guilty, the only claim that is left is that the plea was non-consensual, apart from jurisdictional challenges which aren't relevant here. That's why the state court's finding of knowing and voluntariness is so important. Now, there are three sets of questions here. First, there are procedural questions involving the application of the habeas statute, what should be reviewed and how it should be reviewed. Second, there are the merits of the claim. And third, if necessary, the remedy to be ordered. I'm almost at the end of my five uninterrupted minutes. I plan first to get to the application of the habeas statute, but if this court wishes to direct me to another one of the questions, I'm happy to go there. All right. Thank you. Since you've waived your full five minutes, I'll start in. I gather from you, and we know from the three state court opinions,  and the state courts base that on Rule 590 of the Pennsylvania Rules of Criminal Procedure, none of which asks whether defendant's attorney counseled him. And we know from the Supreme Court decision in Van Moltie and our decisions in Day and Caruso that counseling, knowing what the guidelines provide, et cetera,  and so my question to you is, does Edgar require deference to the state finding of voluntariness of the guilty plea when there is nothing in the record to show that Sciola counseled him as to what the guideline was and, in fact, the record shows to the contrary? Well, Your Honor, yes, I believe that deference is required. Your Honor's question goes to a claim that the counseling fell below reasonableness level. According to the appendix, the record, which I have gone through, including the state record, which wasn't in the appendix, there was no counseling. Can you show us where there was any statement that there was any counseling about the guilty plea? Well, I can show you, Your Honor, that there is evidence that he discussed the guilty plea with his client, which, as I understand it, is the claim that's being made here in federal court. The idea that the counseling was not good enough, that is, the lawyer told his client about the plea but basically didn't give him an option, clear options, that's a different claim. Well, the cases say, I just want to know where this is in the record according to you, that the lawyer has to discuss what the guidelines are and what the options are and I can't find, I'm just wondering whether you can find where it says in the record that Sciola told him what the guidelines are and he says he never knew. Your Honor, I don't know that there is a place in the record where that's on the record, but that's because that's not the claim that was made. I mean, what we have here is Mr. Sciola saying, and this is in the appendix at 38, I did repeat the offer to him, meaning Mr. Boyd, after he discussed it with his parents. It would have been way after the fact and after I had basically informed the Boyds that I thought we could do better. A couple pages later he says, I don't believe the offer was ever off the table. But just giving the offer without putting the context there, so a client can make a reasoned decision as to whether or not to accept or reject the offer, are you saying that they, we're on bond, are you saying we should reconsider they, that they went too far, that in counseling a client in terms of a plea, you don't have to explain what the guideline implications are, is that what you're saying? No, absolutely not, Your Honor. Are you saying that a lawyer, in order to perform effective assistance, does have to advise a client of the guidelines, the operation of the guidelines, and give some context to the offer? I think that is still good law because the law is clear that the eventual plea has to be knowing and voluntary. Where did that happen here? Where was there any kind of counseling in that strict of a sense here? Well, Your Honor, there's no discussion in the record of the guidelines, for example, specifically being discussed. But what we're talking about here, this is a garden variety claim of ineffectiveness for not giving good enough advice. And if that's what we're talking about, then Strickland clearly applies. And the question under Strickland is, would he have accepted this offer if he had gotten the better advice? There's no per se rule of prejudice. There's no, even if deficient performance is satisfied under this claim, which, again, I repeat, is not exactly the claim we've been litigating up to this point. That's right. One of the main problems here is that we have two different claims, as you've mentioned. One deals with the failure to assess the possibilities, that is, whether he should accept the plea or not, failure to advise him. And the other is failure to communicate or even discuss the offer with him at all. And there is, and I think you point out in your brief very clearly, the discrepancy between the appellate decisions on direct appeal and on PCRA appeal and the use of the previously litigated rule to dispose of some of these issues. But let's go, could you take us through that analysis so we can figure out whether or not this claim has been addressed on its merits by the state court system? Yes, Your Honor. In my view, the previous litigation bar ultimately doesn't change the outcome here. But let me explain how it works or how I think it works, because it is, it's tricky. The previous litigation bar is a procedural rule that prevents a defendant in state court from litigating the same claim or variations of the same claim in successive rounds of review. Here on PCRA, the superior court invoked the previous litigation bar to prevent relitigation of its earlier decision on direct appeal that Boyd's plea was known involuntary. Now, some of the confusion over what's known as the previous litigation bar is just from its name. It's not a certification that the claim raised on collateral review is the same as was raised on direct appeal. It's not a certification that the claim has already been exhausted. It's a combination. The way I look at it is that it's a combination of res judicata and waiver. If a claim has already been decided, it can't be relitigated by the same parties in the same case. That's res judicata. And you can't get around that by adding peripheral new facts or new legal theories. That's where the waiver type rule kicks in. So here on direct appeal, Boyd argued that his lawyer had given him bad advice about the first plea offer. The superior court on direct appeal correctly noted that ultimately that's a claim about whether the plea was knowing and voluntary, and that's to get to the question from Judge Slobiter and Judge McKee on that. To the extent that claim was raised, it was raised on direct appeal, and that would be subject to ad pediferans. The court looked at what Boyd knew, what the colloquy said, the plea colloquy, and determined that the eventual plea was voluntary. On PCRA, collateral review, a few years later, Boyd gives the claim new spin. And the problem now is he says not the counsel gave him bad advice, but no advice face-to-face, at least not immediately because there is evidence in the record that there was face-to-face discussion of that. Where? Where in the record? It's, Your Honor, A38, Mr. Sciola's testimony. There were moments when I sat with Chris and I did repeat the offer to him, but it would have been after, way after the fact, and after I had basically informed the Boyds that we could do better. After he pled guilty. No, before he pled guilty, but after the offer was rejected. Is it good law for us to say that a defendant is fully informed of a plea and the consequences of the plea if a lawyer gets an offer and essentially rejects it before informing the defendant and then relays that offer to a defendant via a third party or a surrogate? Is that good law? It depends on the circumstances, Your Honor. I think the court should be hesitant to endorse a per se rule that any time there's a discussion in which, between the lawyer and the prosecutor, no, I don't like that offer. And then the lawyer goes back and informs his client in some way that there's something wrong with that. I mean, the testimony here is that the offer, the prosecution's offer, was still on the table up to the time where Boyd entered his open plea. Is that clear? I thought there was some issue about that, and you just a few moments ago said that Mr. Sciola rejected the offer before he sat down and discussed the offer with Boyd, and I'm still not sure what the discussion is. Well, the word reject is one that was used. He told the mother he rejected it. Yes, but he also says on page A40, I don't believe the offer was ever off the table. In other words, as a practical matter. Well, it turned out it was off the table later on. They never renewed it. But the question was, is it up to the prosecution to renew it, or does the defense have to ask for it? But there was ultimately a second offer, was there not, for a plea? I'm not sure it was an offer from the prosecution, but it was an agreement that an open plea would take place because the defense thought it could do better than the first offer. Well, you just mentioned that it's up to the defendant to ask for it. How did Boyd know enough to ask for it? Going back to our prior discussion, will you agree, I think, that under Hill and under our jurisprudence in Caruso and today, there has to be something other than you've got an offer here for 48 years. There's got to be some bones to put that on and some context and some meaning to what that suggests in the real world, including the discussion of the guidelines, even the Pennsylvania guidelines, as fluid as they are. They've got to be communicated to the defendant. Even Napper would suggest that. What does it mean, then, to say, well, the defendant's got to ask for it if he's never been put in a position by the counsel who's supposed to advise him under the Sixth Amendment to be able to know enough to ask for it because he doesn't really understand the implications of the plea that has been rejected by his attorney? Well, I think the idea that he had to ask for it is kind of a red herring. In this case, what you're saying, as I understand it, is that you have serious concerns about whether he was properly advised. And if he had been properly advised, because the offer was never officially off the table, if he had said or his lawyer had properly advised him and he said, if Mr. Boyd said, you know, that's an offer I really want to take, then the possibility would have existed that it would have been accepted. It's not so much did he ask for it. I think the real question is what were the terms or what was the extent of the counseling. And that's not what this case has been about up to now. If it is about that, then I'd say this. The deficient performance prong is arguable and tough, relatively tough for me. But in that case, the prejudice prong, it's garden variety prejudice. We have a fact finding from the magistrate judge that he would have accepted this offer. We have no indication that he wouldn't. I mean, the fact finding is that he would not have accepted the earlier offer. The magistrate found that he wouldn't have accepted the offer because he basically would have done. It's kind of interesting because the magistrate says, look, he'll do anything that the attorney tells him to do, which kind of raises in my mind an issue about just how able is this guy to participate in his own defense and work with his attorney in his own defense. I know competency is not part of this. It's dancing around the periphery, but it's not really in the case. But again, unless the person is in a position where he knows enough to be able to accept or reject an offer, how can we conclude that he would have automatically rejected the offer based upon counsel's advice? If he'd known the possible exposure, what things were looking like under the guidelines, the possible enhancer of using the baseball bat and everything he did after that, that might actually have jumped up to the aggravated range and out of the minimum range, the standard range? How are we to say, and if we are to say it, what is the evidence that has to be put on the record? If he says, had I known about that, I would have accepted it. You can say, well, that's self-serving. It clearly is self-serving. But every time somebody gets on the witness stand and says something with a motive to slant the testimony in his or her behalf, it's always self-serving. And that's what fact finders do. They understand the circumstances. They determine whether or not, given the interest in the outcome, in weighing that against the demeanor and everything else, the person's testimony is credible. That's what a trial is about. So the very fact that it would have been self-serving testimony doesn't mean that the fact finder was not entitled to rely upon that testimony in finding prejudice, does it? The fact finder can take that into consideration, obviously, but there's so much else to take into consideration. The important point that I'm trying to make is that if we're talking about bad counseling, then it's clear there is no per se rule of Strickland prejudice being satisfied, even if the guidelines aren't mentioned. It is clear that their prejudice has to be demonstrated. Right. And how do we do that? I guess that's the trouble with it. How do we do that? Because as the magistrate found, Boyd knew about the terms of the offer. Your point is that, well, he didn't know very well about the terms of the offer. Was it made clear to him at the time he actually entered the plea that the 4 to 8 offer was still on the table? There's some disagreement about how long the offer was. It's our position that it's 4 to 10. His position is he would have taken it if he knew about it. That's what he says. My position is that he clearly would not have taken it. But that's what was before on the direct appeal. That's what was on the affidavit, which you gave us today for the first time, and most of my colleagues haven't been around to get it, the second half of the affidavit. I can't believe that this case went on for so many years, and we're working with an appendix that has an affidavit that's inadequate. But in any event, the only thing that was before the Superior Court in the 2002 opinion was an affidavit that says I wouldn't have taken it. Now, what more is necessary if I had known the guideline range? In a situation like that, that's not the only piece of evidence even in front of the State Court. What was before the 2002 Superior Court? The guideline range for the crime for which he pled guilty was something in the nature of three and a half to seven years. The plea offer of 4 to 10 is smack in the middle of that. It's not obviously a great bargain. If he thinks, and his lawyer certainly thought, as he testified clearly, he can do better, and every indication, frankly, was that he was going to do better. Remember that the state judge granted him bail and seemed to be thinking, you know, this young man, incarceration might not be the best answer. But the guideline range was three and a half to seven. The offer was 4 to 10. It is not obviously a great offer. But it would seem to me the facts of the case would qualify him for the aggravated range, and that's something that any competent lawyer would take into account. Even above the aggravated range. Doesn't the affidavit and the presence of the affidavit in the direct appeal put you under 2254 D2? And isn't there a problem that therefore gets you out of a DEPA because of the affidavit and the way the superior court decided the case based on that? I take it you mean Mr. Boyd's allegations that the court did not understand it. I disagree with that because if you read the affidavit, what the affidavit says, and let me see if I can, I know it's on the appendix of page A116. Yeah, but include in that the part of the affidavit that I got today for the first time, which most of my colleagues haven't gotten, which says in Paragraph 8. The important part is he says that he wasn't told. That's Paragraph 3. He wasn't told directly. And the other part that's important is that he said that had he known of the guideline range, he would have accepted it. But he also says on Paragraph 8, which came to us today, if my attorney had correctly explained the sentencing guidelines to me and correctly advised me about the great likelihood of a sentence higher than the plea offer, I would have accepted the offer of four to eight years in prison. I understand now that the offer was below the standard range of the sentencing guidelines and that there are several circumstances in my case which make a much higher sentence likely. And that wasn't in the appendix. We got it today. Your Honor, first of all, I apologize for that not being in the appendix. As I was preparing for argument, I noticed that it was absent, and I tried to correct the record. Number two, the State courts were not bound to accept that statement and to answer and they could reject it by making a common sense decision, a common sense evaluation of what likely Mr. Boyd would have done. What was that common sense evaluation? The common sense evaluation was what I was saying before, that the sentence, that the plea offer was not obviously great, was not obviously a great bargain. And that rejecting it, and this is exactly what eventually happened at the evidentiary hearing, is Mr. Sciola testified exactly to this. He thought he could do better. That's within the realm of professional representation. And Judge Fischer, if I could just quickly go to your point, because I think it's an important point. The affidavit, the direct appeal affidavit, Mr. Boyd swears to this. Mr. Sciola spoke to my mother on January 24th on the phone and asked her to tell me that the DA's office had offered me a plea of four to eight years in prison if I would plead guilty. And again, we disagree about the length. He told me through my mother that the offer was unacceptable. So he told me through my mother. So when the State court on direct appeal says he was informed, that counsel informed him. Does that literally translate into I found that through my mother who was informed by Sciola? No, I think it does, because it doesn't necessarily mean that indirect communication is off the table. Counsel informed him. And I would also say, Judge Smith, that remember that the claim that was in front of the court on direct appeal was not that there was no communication. The claim was the advice was bad. So I think if we're going, I think we need to be a little bit more forgiving of the State court on direct appeal that that was not the issue. And if its language was perhaps. Mr. Golginas, thank you very much. We'll have you back. We'll have you back on rebuttal. Why don't you save it for the rebuttal? Thank you very much. Thank you. We'll start out with Judge Jordan's question when we have you on rebuttal. Why don't you ask him what it is? You can think about it for about 15 minutes. I'm happy to say it. Good morning, Your Honors. May it please the Court. Cheryl Sturm for Christopher Boyd. Good morning. The Commonwealth repeatedly downplays or leaves out the fact that Mr. Sciola had rejected the offer before he communicated it to the mother. And the information he communicated, and the only information he communicated, was that it was unacceptable. There was an affidavit from the father attached to the PCRA petition that said when he encountered Mr. Sciola in the hallway of the Criminal Justice Center, what Mr. Sciola had to say about the plea offer was it was unacceptable. It is not correct that the 2254 raises the claim only that Mr. Sciola did not communicate the offer directly to Mr. Boyd. This is what is in the pertinent. First of all, we cited Rochesano v. Menefee, Von Moltke, Day, Cullen, Carmichael, for the principle that the Defense Council has to have the advice of counsel on all aspects concerning the alternative choices, the maximum and minimum sentences that can be imposed, when possible, what sentence is likely. And this is our pertinent facts. In fact, Mr. Sciola did not consult with the client at all. Accordingly, these are the affidavits attached to the PCRA. They make the assertion that Mr. Sciola did not provide the client, Christopher Boyd, with the information necessary to make an informed choice whether or not to accept the plea. Mr. Sciola did not explain the operation of the sentencing guidelines. He did not inform the client that the plea offer was in the standard range. And we went on to say, in our 2254, Mr. Sciola was constitutionally ineffective for failing to communicate the offer to Christopher Boyd before rejecting it. Next sentence, Mr. Sciola was constitutionally ineffective for not discussing the offer with Mr. Boyd before rejecting it. So we did make the claim that in addition to rejecting the offer, abrogating to himself the decision whether or not to accept the plea, he also did not give Mr. Boyd the information necessary to make any decision at all whatsoever. But when I questioned Mr. Sciola about that at the evidentiary hearing, he said, well, you know what, he really didn't participate in the decision-making process. To reach a couple of issues that we might not get to otherwise, on the issue of whether the offer was four to eight years or four to ten years, at the evidentiary hearing, the Commonwealth was given the opportunity to put on any evidence it chose to. Before closing the evidence, the magistrate judge asked the attorney for the Commonwealth, do you want to bring in other evidence, do you want to put any evidence on this? And the exact quote from the Commonwealth was nope. Okay, I did not prevent the Commonwealth from putting on any evidence. They were invited to do so. They elected not to. In Exhibit E to the Commonwealth's motion to further expedite the appeal is the judge's ruling. I'm sorry, Exhibit E to the Commonwealth's motion to further expedite the appeal filed in this court contains an order from the magistrate judge, I'm sorry, from the district court judge, explaining that she now concluded that the offer was four to eight years and not four to ten years. On the credibility remand, no remand is necessary for a credibility determination. In the order denying the motion for reconsideration, which is at pages A3 to 4 of Appellant's appendix, the judge specifically said this was not a difference in credibility determination. She rejected the magistrate's findings that Mr. Steele's conduct was reasonable. And she also said that the prejudice that she found was the denial of the right to make the decision on his own. That was the prejudice. There is no credibility question on that. Both the magistrate judge and the district court judge agreed that Mr. Steele rejected the offer before communicating it. She said the prejudice to this defendant is the loss of the opportunity to make that decision on his own. That's the prejudice. We don't need a remand on that. Mr. Boyd has not abandoned his claim of ineffective assistance of counsel on appeal. The magistrate's report and recommendation did not address the issue whatsoever of ineffective assistance of counsel by appellate counsel. Therefore, in our objections, we did not address it. However, there was, in the 2254 motion, we addressed ineffective assistance of counsel by appellate counsel. The parties were asked to file separate briefs on the Collins issue. And on the Collins issue, we discussed at length the ineffective assistance of appellate counsel and made a Strickland analysis. And so in those instances, the issue was argued before the court. The court was to make a de novo determination following the magistrate's report and recommendation. And this court certainly is entitled to make a de novo determination. It might be over my time. The district judge made no finding with respect to that. Is that correct? The district court judge said because we didn't make any argument on the ineffective assistance of appellate counsel, it appeared that we might have abandoned the argument. I'm not sure where the court was looking for the argument. It wasn't in the objections because the magistrate judge never raised that issue. According to his logic, I would think if trial counsel was not ineffective, then appellate counsel was not ineffective for making that argument. But you're not raising appellate counsel ineffectiveness before us. As I read your brief, you're just raising trial counsel's ineffectiveness. Is that incorrect? No, Your Honor. We're still pursuing. We have not abandoned the claim that appellate counsel was ineffective. What we the reason that we've one of the issues that we've pointed out as to why the issues are not identical is that we raised a claim of ineffective assistance of appellate counsel in the PCRA that was ignored and dismissed as previously litigated, which obviously could not have been previously litigated. Isn't it true you abandoned that before the panel, though? Sure. I don't recall. Well, I was on the panel. I could be in error. If I did, I did then, Your Honor. It was a long time ago, and I haven't, if there was a record to review, I don't. I agree. I agree with Judge Harlan. Why do you so resist saying that the state court decisions were not on the merits? Because isn't there a very good argument you should be making that what we had here was an unreasonable application of clearly established law as decided by the Supreme Court, which was based on an unreasonable determination of the facts, based on the evidence presented to the superior court. But you resist saying that what happened below was on the merits, and I don't understand, speaking only for myself, how this case has gotten so complicated. I don't know how it's gotten so complicated even. And I've spent the last several days on this case. Actually, Your Honor, what I was going to argue today that. You could say months for me, but go ahead. Okay. Why don't you answer my question? Yes. Well, obviously the standard of review is better for the appellant if it's on the merits. But I am prepared to argue to the court today. In fact, I have as part of my arguments that if it was a decision on the merits, it's even more frightening. That means the law in Pennsylvania is that. Wait a minute. I am getting frightened here. Are you saying that the state court decision was a decision? No. Our position has been that the decision was not on the merits. Okay. You've asked us in the questions to address, well, what if it was on the merits? Okay. What's the implication if it's on the merits? We would not disagree with Judge Barry's question to you. It was an unreasonable application of. Exactly. Okay. Because if it was a decision on the merits, it means then that the law in Pennsylvania is that a defense attorney is not required to convey every plea offer to the client and that there is no remedy for excluding the defendant from the decision-making process as long as he later enters a guilty plea. Ms. Sturm, you argued that you were in this case in your defense. You first came in on PCRA, correct? Yes. Okay. And you argued to the PCRA court that Mr. Sciola never directly discussed the plea offer with your client, correct? And we argued that that was also before the superior court in his own affidavit. All right. You argued that. But the fact is, Mr. Quinn, whom the three judges on the panel agree, there's no pending claim of ineffectiveness on his account on appeal. Mr. Quinn, on direct appeal, specifically told the superior court that Mr. Boyd knew about the plea offer and that he relied upon counsel's advice and rejected the plea offer. Then you came in on PCRA and you argued precisely the opposite. How can we conclude that the PCRA court should have had a hearing or done anything except reject out of hand the directly contradictory argument that you were proffering? Well, because in the PCRA court we did make a claim of ineffective assistance of counsel, that appellate counsel had misconstrued the client's affidavit. And when you're looking at that statement, Mr. Quinn was not saying he got that from Boyd. He said another member of his office had contacted Mr. Sciola and Mr. Sciola told him that he had communicated the offer to Boyd and that the decision was left up to Boyd what to do. That's in Mr. Quinn's appellate brief. Obviously, there's something wrong there because when we had an evidentiary hearing, that's not what Mr. Sciola's testimony was. That's not what Mr. Sciola said the facts were. So there is — You're saying Quinn's brief was wrong. So you're saying Quinn was ineffective, but you waived that. Correct, Your Honor. But looking at what we have on the record, it looks to me like on direct appeal, when Quinn was representing him, the argument was made that Boyd was given bad advice by Sciola. It looks to me like what you said on the PCRA portion, that it was the counsel was ineffective for failing to bring the plea offer to Boyd at all. Correct. Those are different arguments. Right. But we were told it was previously litigated. I understand. The paper court said it was previously litigated. The PCRA court and the superior court. But the point that you made was different than the argument that was made on direct appeal. It was different. It was the argument that should have been made on direct appeal, but it was different than the argument. The facts that the defendant has been presenting have always been the same. If anyone had bothered to either defense counsel or the superior court or the Supreme Court of Pennsylvania look at what Mr. Boyd was saying in his affidavit that was attached. He's saying he never communicated this offer directly to me. Isn't it possible to read the superior court's decision that the plea was knowing and voluntary and intelligent as taking the position that you yourself have taken? If I've read the objections to the magistrate's report and recommendation correctly, you say specifically there, quote, Is it possible that the superior court was looking at the plea that was taken and saying the same thing you said in response to the magistrate judge's report, which is, yes, when the second plea offer came, the decision to accept it was knowing, intelligent, in other words, thoroughly counseled and voluntary. Is that one way to read the superior court's decision on direct appeal? I think that that is one way to read the superior court's decision on direct appeal, but there's a problem with that, and that is that they have failed to recognize that plea bargaining is a separate critical stage of the proceedings. Well, if it's true that that's a way to read it and it's a decision on the merits, I'd like you to consider this and respond to it. Incidentally, Mr. Bilges, you might want to be thinking about this, too. Quote from Tollett, the Supreme Court's decision in Tollett v. Henderson, A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of a guilty plea. Help me understand how, if, as you have asserted in the report and recommendation objections, the plea was knowing, intelligent, and voluntary, one gets around the Supreme Court's emphatic statement that the plea itself represents a break and what went before is no longer of constitutional moment. In your response to Judge Jordan, you might also quote the following sentence from the same opinion that Judge Jordan quotes, which is Tollett, and you might say, he may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMahon. Yeah. So. Me first. Okay. Well. Can I just say ditto to that? Let's have your response to that question. It is. It's apples and it's oranges. Then we're right back to saying that this is the acceptable law in Pennsylvania, that a defense attorney is not required to convey every plea offer to the client. He can just send over those that he likes. And there is no remedy for excluding the defendant from the decision-making process if he later enters a guilty plea. That's what you're saying if you want to apply Tollett to this case. Well, that's not what I'm saying. I'm asking you to respond to what the Supreme Court of the United States says. Because there's a separate and distinct process, a separate and distinct critical stage, and that's the plea bargaining process. The plea bargaining process is entirely different from whether the defendant received enough information to enter a knowing, intelligent, and voluntary guilty plea to whatever guilty plea is left at that point. You're saying where a properly informed defendant with proper advice of counsel and counseling enters a guilty plea, that guilty plea cuts off prior constitutional deprivations, and that that's what was meant by the court's language in the subsequent passage Judge Sloboda read. Then what do I make of your statement that the petitioner is not claiming the guilty plea, the one he entered, he is not claiming it was not knowing, intelligent, and voluntary? Are you here in argument saying that what you said in front of the magistrate judge or, excuse me, in front of the district court in objecting to the report and recommendation isn't really what you meant? Nor is he asking to withdraw it. That's not the relief for a violation of the right to effective assistance of counsel in plea bargaining. If you succeed on your claim to effective assistance in plea bargaining and you are to be put back in the position you would have occupied had counsel been effective. Doesn't he have to at least make the request to withdraw the plea? No, because as part of the relief, the relief is to put him back in the position he would have occupied had counsel been effective. But the trial court does not have to accept that plea. No, but his relief is to be back in the position he would have occupied had counsel been effective. I have the opportunity to take a four- to eight-year plea. Okay. Now, there's nothing meaningful to that unless, of course, as a part of the process, the plea he did enter is vacated. But it's vacated only so he can get the relief to which he was entitled. That doesn't mean he'll get the relief because the trial court may not have accepted the 48. But he might not have accepted it the first time around either. That's what we're entitled to, is to be put back in the position that he would have occupied. All you're entitled to is vacation. I'm sorry. No. Go ahead. You're not saying it wasn't a knowing and intelligent plea. I'm not. That's what makes it so confusing. The ultimate plea that was entered may have been voluntary knowing and intelligent. But along the way, there is another stop in this procedure. Okay. The Supreme Court has said the defendant's entitled to effective assistance of counsel at every stage of the criminal process. What I just said is this goes from simplicity to very, very complicated overnight, from passage to passage. If you're saying the second plea was knowing and voluntary and intelligent, as he said during the colloquy, and as you just reiterated, then it seems to me endemic in your statement is some concession that at some point, before he entered his open plea, he was aware of the sentencing guidelines, was aware of the range of his sentences, the possible exposure, and at that point he had to have known, at some point he had to have known, that that 48 that was offered to him, either one, it looks pretty good, my goodness, explore whether or not that's still there, or two, I don't want to accept it. I think I can do better by arguing my equities to the court. That's implicit in what you just said. Well, Mr. Sciola testified he never discussed the sentencing guidelines with the defendant. Well, then how does the second plea become a knowing, voluntary, and intelligent plea? If the guidelines were never discussed, and if they, and Caruso, and Hill, and the obligation imposed on Seurat Counsel, that was never complied with, how does the second plea ever become voluntary, intelligent, and knowing? Because the defendant was never in a position to know enough to waive the rights that he gave up when he gave up, when he entered his second plea calibration. That's a softball. It's really not. I see your point, Your Honor. Well, isn't that the, isn't that the problem, though, with this case, is that the information that Mr. Sciola testified to during the evidentiary hearing was never presented to the superior court. If that was presented, then the state court could have had a hearing and unpacked whether there was ineffective assistance. Why should we not give deference to the superior court's findings of fact that Sciola told Boyd about the plea, and he decided to reject it? He took his lawyer's advice, rejected it. I guess to ask it another way, would you be standing there arguing Sciola was ineffective if Boyd had gotten a one-and-a-half-year sentence after the open plea? No, but, well. So it's all about the bad results. I'm not sure which of the questions you want me to answer first. Well, take the simplest one. Would you be standing there arguing that Sciola was ineffective if your client had gotten a one-and-a-half-year sentence after the open plea? Defense counsel would have been ineffective. Boyd would have had no prejudice. Defense counsel still would have been ineffective by failing to communicate to the defendant the offer, by taking away from the defendant the opportunity to decide his own fate, which is what Nunez describes this as, by making the decision whether to accept or reject the plea. Of course he's ineffective. He's ineffective when he fails to tell him about the guidelines. But if we accept the rule that you're advocating, then I as a defense lawyer would specifically advise my client, I'm not going to tell you anything about the guidelines or anything. We're going to walk into court, we're going to enter an open plea, and if we get hit with a bad sentence, then you're fine on PCRA. It's ineffective and you're fine. Isn't that a perilous path for us to go down? I don't think that's likely to happen, Your Honor. Well, the lawyer would just have been constitutionally ineffective, period. Every court that has ever considered this has said the lawyer has to give advice. My question to you is why are you unwilling to say that if your statement in the magistrate, before the magistrate judge, that you're not saying the plea wasn't voluntary, why aren't you willing to say that if that means that he was counseled, then I was wrong and I withdraw that now? I can see an argument that if Mr. Sciola said he wasn't advised about the guidelines, but our position is it really doesn't matter what happened at that plea. It doesn't matter. The only thing that matters is what happened at that plea. No, no. My colleagues have asked you about your statement before the magistrate judge. Judge Jordan did and Judge Hardiman did, and I think maybe Judge Fisher did, that you said in the magistrate court we're not claiming that the plea wasn't voluntary. And I am asking you why you're not willing to say here if by that it's construed to mean that voluntary includes counseling, then I was wrong and I shouldn't have said that. You're asking me why I'm not willing to say that? Yes. Why aren't you willing? I thought I did say that in response to Judge Fisher's question. Well, I didn't hear it. Let me pick up with Judge Hardiman's point. Let's assume that he got the sentence he actually got, and he's obviously not happy with it. He said at questioning, and this is on A61, if Mr. Sciola had explained to you that there were sentencing guidelines in Pennsylvania and that you could get much more than four to eight years if you were convicted, what would you have done regarding the four to eight year plea offer, the first plea offer? Answer, I would have accepted the offer. So if he would have accepted this offer, knowing that the sentencing guidelines could be much greater than four to eight or four to ten, why did he not tell Sciola this after he learned from his mother that this offer had been rejected? Why didn't he call Sciola and say to him, I think we ought to go back and revisit this? Wasn't the ball in his court? The only thing that Sciola conveyed was there was an offer of 48 years that was unacceptable, and he had rejected it. But if he doesn't explain it. Even if I knew it would have been much worse than I could have gotten from the sentencing judge than four to eight,  If Sciola did not tell him, and Sciola said he never discussed the sentencing guidelines with him, what information did he have to question counsel's decision? In hindsight, he's saying, even if I had known, I could have gotten much worse. In fact, the sentencing judge says, do you realize you would get 12 to 25? Well, that's true, but he's in the courtroom and the other plea is behind him now. But before he steps up and says, I plead guilty, he knows that there could be much worse than four to eight. No, after he pleads. He doesn't find that out until after he enters. But the judge still says to him, you could get 12 to 25. You understand that? Yes. Correct. Isn't that basically what the state courts were saying, is willing to go with the roll of the dice? But how do you get around the fact that there's ample Supreme Court precedent, Borden-Kircher versus Hayes, Williams versus Taylor, Strickland. That helps you with all of the first prong of Strickland. None of those cases help you with the second prong, the prejudice prong. But it says that it's a critical stage. It's the stage that only the defendant has the right to make the decision. Agreed. That's all the Sixth Amendment applies. Strickland one has to be satisfied. You have to show the performance falls below a certain threshold. Assume all that. Assume that. And none of us, I don't think, would quarrel with the issue that a sentencing colloquy is a critical stage of the proceeding. You're entitled to counsel there. Counsel's performance has to clear a certain threshold in order to satisfy the guarantees of the Sixth Amendment. Assume all that. How do you then clear hurdle two if, and I think what you're being asked now, if the record suggests the finding or requires a finding that had he been counseled about the application of the guidelines, he knew his exposure going in on the open plea because the judge told him what the open plea exposed him to on the bottom end, as well as the maximum. And he took a plea anyhow. Doesn't that give rise to the likelihood, or at least the argument, that had he been given adequate counsel by COO or had he been told about the operation of the guidelines and told directly, personally, get off here for four to eight. Under the guidelines, the exposure is X. Doesn't that suggest that he would have, in any event, gone for an open plea because he would have followed his attorney's advice, thinking he could have done better, rolled the dice, as the term goes to use? And if that's the state of this record, how do you establish prejudice under form two of Strickland? But he said if he had been properly advised, he would have taken the offer. And when was that first, when did he first say that? He said... At what stage in the state court proceedings did he say that? Let's see. Did he actually argue that very point in his brief on the direct appeal to Superior Court? In his affidavit. First of all, the affidavit. When was the affidavit submitted, at what stage? It was, I believe, submitted for the first time to the Superior Court judge in post-match. He was attached to the Superior Court. Okay. You were counsel before the PCRA court? Right. At the common pleas level? Yes. All right. Why did you not submit an affidavit of Sciola and or Quinn at that particular stage? Well, apparently the Commonwealth had spoken to Mr. Sciola, and the Commonwealth had... No, no, no. First of all, I've never submitted an affidavit. You're on PCRA appeal. You're alleging ineffective assistance of counsel, and you had the opportunity to submit an affidavit of the trial counsel and the appellate counsel on direct appeal, and you did not do so. Why not? Your Honor, I have never submitted an affidavit from defense counsel in any PCRA that I've filed, and I've probably filed... Why? Why is the question? Why? First of all, the defense counsel is usually the Commonwealth's witness. Secondly, I had an affidavit from my client and his parents as to the facts. Most of the facts were undisputed by the Commonwealth's own brief that said, repeated what was in there. They weren't disputing it. They weren't disputing why Mr. Sciola... common pleas court, that if you got an evidentiary hearing, you would call Sciola and Quinn as witnesses. I don't recall if that was in the PCRA or not, Your Honor, but we asked for an evidentiary hearing. It was, I think, pretty clear who would be called as witnesses. The Commonwealth always calls defense counsel as witnesses. I never call defense counsel as witnesses, and... Good. Thank you, Ms. Sturman. Okay. Thank you very much. Thank you. Mr. Doldrins. We will allow Judge Jordan to ask his question. Do you remember it? Yeah, I do, actually. I'm curious to know whether the Superior Court record can be read, because there's a lot of discussion with you about the plea offer, and there seems to be two plea offers here. So, looking at the plea offer he accepted, the Superior Court's decision says it was knowing, intelligent, and voluntary. Can the record be fairly read to see that statement by the Superior Court on direct appeal as looking at the plea he actually accepted and what he understood in the course of accepting that second plea? Or is that not a fair reading? No, Your Honor, I think that is a fair reading of what the Superior Court said, and I think the Superior Court... Is that a decision on the merits? Yes, because it's a decision on the merits because any time that you raise, as you made the point during Ms. Sturm's argument, Judge Jordan, that any time there's a claim about an error that occurred before the entry of a plea, it has to go to the knowing and voluntary nature of the plea that was ultimately accepted and entered. And that has to be part of what this Court finds, and it has to be part of what the Superior Court would find in order to grant relief. It has to be part of it. Is there any evidence to show that Skiola counsel, assuming that there are two separate events, one, I don't know, because Judge Jordan assumes there's a first plea offer and then the second offer, the open plea, is there any evidence that Skiola spoke to Boyd and counseled him before the open plea? Which, yeah. Well, yes, in that page 838 to 840 thereabouts in the appendix, Mr. Skiola makes it clear that he spoke to Boyd before the open plea. He says that he repeated the first offer to him. I don't have here. I have it in front of me so you can tell us. There's a plea colloquy, too, in front of the Court. And that's what I was going to get to otherwise. Well, yeah, but before. Excuse me. Go ahead. Yeah, go ahead. Mr. Delginus, please answer Judge Jordan's question. Yeah, there was a plea colloquy, and that's why there are such things as plea colloquies, because it's difficult to go behind the door to find out what actually happened. Because, Your Honor, there wasn't any claim raised in state court or even now, as I understand it, that the open plea was not knowing involuntary, which I think is a major omission from Boyd's counsel, that question was never really litigated. So to the extent it doesn't appear, you know, a specific answer to that question doesn't appear in the record, I think that's because that wasn't the claim. But I think it is clear from Mr. Sciola's testimony that he said, at least to Boyd's parents, I think we can do better. He said that at 838. He also said to me that he never believed it remotely possible that he'd get the sentence he got. So I think that if one can assume that if he was counseling Boyd, as he should have been, he would have said to him when suggesting that he take the plea, look, I don't believe it's at all possible. That's exactly right. And the plea colloquy, I mean, it's interesting. I mean, I know it's very nice. There's a plea colloquy. But anyone who's been a trial judge knows that you go through this boilerplate and to attach too much significance and meaning to an understanding by a defendant of a particular provision, you know, do you know you could get life imprisonment? Yes, I know it. You know, we go through that, that litany. But the more important question, I think, here is what he really did know as a result of what he was told. Ultimately, yes, although the legal system, because this is such a vulnerable question and a question that's difficult to know in most cases, the legal system does place a fair amount of emphasis on the colloquy sort of as a compromise. I mean, as a practical matter, that's the best we can do. Judge Breyer, I did want to address your question briefly, the question you posed to opposing counsel. If the state decision was on the merits, and if this court holds that the state court misunderstood the facts, and it was an unreasonable determination, I disagree with that. But what would happen? The gateway would open to a federal hearing, which is what happened in front of the magistrate. The testimony supports the magistrate's finding that Boyd would not have accepted the offer. That's also supported by the sentences that I was talking about, the predictability. It's also supported by the colloquy. The Strickland prejudice is not established. And this is then a simple case. Yes. Now, could you comment on the district court's decision disagreeing with the magistrate judges, finding that he would not have accepted the claim? In the first decision by the district court, Your Honor, the district court suggested that she disagreed with the magistrate's finding that Boyd would not have accepted the plea. As under Hill v. Byer, the district court is not entitled to overturn a credibility finding of the magistrate without having its own hearing. And I see my time is up. I have one question. Are you arguing that there shouldn't have been a hearing before the magistrate judge, because you keep referring to what happened, just as a yes or no? Yes. You think there should not have been? We think there should not have been. If the score finds otherwise, though, what happened in the magistrate's finding should govern. And the district court, if it disagreed, it should have held its own evidentiary hearing? Yes, although I would say that there has to be some objective reason other than a vague disagreement with what happened before. Good. Mr. Delginis, thank you very much. Thank you. Mr. Sturm, thank you very much.